**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BEN STEFFEN, | ) |
| on behalf of Plaintiff and the class members | ) |
| described below, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EAGLE VALLEY VENTURES d/b/a EAGLE | ) |
| VALLEY LENDING; | ) |
| AMY TEPSIC; MARK DAVID TEPSIC; | ) |
| CHARLES JOHNSON; THE SOVEREIGN | ) |
| FINANCIAL SERVICES TRUST; PHILLIP J. | ) |
| TORTORICH, in his capacity as Trustee of | ) |
| The Sovereign Financial Services Trust; | ) |
| TECH PROCESSING AND SERVICING, INC.; | ) |
| TECH PROCESSING AND SERVICING I, LLC; | ) |
| TECH PROCESSING AND SERVICING II, LLC; | ) |
| TECH PROCESSING AND SERVICING III, LLC; | ) |
| DAKOTA PROCESSING AND SERVICING I, LLC; | ) |
| DAKOTA PROCESSING AND SERVICING II, LLC; | ) |
| DAKOTA PROCESSING AND SERVICING III, LLC; | ) |
| and JOHN DOES 1-10; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT – CLASS ACTION

1.    Plaintiff Ben Steffen ("Plaintiff") brings this action to secure redress from

predatory and unlawful loans (such as Exhibit A). The loans are made in the name of Defendant

Eagle Valley Ventures d/b/a Eagle Valley Lending ("Eagle Valley Lending"), which claims to be "a

wholly-owned and operated entity, arm, and instrumentality of Tonto Apache Growth, a wholly-

owned instrumentality of the Tonto Apache Tribe, a federally-recognized sovereign American

Indian tribe." (Exhibit B) In fact, they are made by a number of non-Native American entities and

individuals: Amy Tepsic; Mark David Tepsic; Charles Johnson; the Sovereign Financial Services

Trust; Phillip J. Tortorich, in his capacity as Trustee of The Sovereign Financial Services Trust; Tech

Processing and Servicing, Inc.; Tech Processing and Servicing I, LLC; Tech Processing and

Servicing II, LLC; Tech Processing and Servicing III, LLC; Dakota Processing and Servicing I, LLC;

1

Dakota Processing and Servicing II, LLC; Dakota Processing and Servicing III, LLC, and John Does 1-10.

2. Plaintiff seeks a declaratory judgment that the loans are void and an injunction against their collection (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq.*, and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.* (Count III – the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), and treble damages under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964 (Count IV-V).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 (general federal question), 18 U.S.C. § 1964 (RICO), 28 U.S.C. § 1337 (interstate commerce), and 28 U.S.C. § 1367 (supplemental jurisdiction). Jurisdiction may also exist under 28 U.S.C. § 1332(d) (Class Action Fairness Act).

4. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016*), aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers, and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello*, 18cv12277, 2022 U.S. Dist. LEXIS 58075,

at \*33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures*, 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

        b.     Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 760 (7th Cir. 2010).

5.      Venue is proper because acts to obtain and collect the loans impacted Plaintiff in Illinois.

6.      Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008) (summarizing statutes allowing 5% to 8% interest).

### PARTIES

### Plaintiff

7.      Plaintiff Ben Steffen is a natural person, a citizen of Illinois, and a resident of Chicago, Illinois.

### Defendants

8.      Defendant Eagle Valley Lending claimed to be "a wholly-owned and operated entity, arm, and instrumentality of Tonto Apache Growth, a wholly-owned instrumentality of the Tonto Apache Tribe, a federally-recognized sovereign American Indian tribe." It is an online lender that offers loans to consumers at annual percentage rates in excess of 600%. (Exhibit A)  It uses the address 30 Tonto Apache Tribe, Suite 138, Payson, Arizona 85541.

9.      Defendant Eagle Valley Lending operated through the website https://eaglevalleylending.com. (Exhibit B)

10.     Eagle Valley Lending does business in Illinois over the Internet, via text

3

message, via Automated Clearing House transactions, and over the telephone.

11.     On information and belief, the actual lending operations were carried out and continue to be carried out in locations other than tribal lands. The operations that are not conducted on tribal land include lead generation, marketing, funding, underwriting, payment processing, and collection.

12.     On information and belief, vast majority of the economic benefit of the activities of Eagle Valley Lending is received by non-Native American persons.  Eagle Valley Lending receives less than 5% of the revenue from the lending operations.

13.     Defendant Amy Tepsic is a citizen of Arizona.  She may be found at 975 Old Lathemtown Road, Canton, GA 30115-7019 or 28170 North Alma School Parkway, Suite 208, Scottsdale, AZ 85262.    She has extensive experience in consumer lending.

14.     Defendant Mark David Tepsic is a citizen of Georgia.  He may be found at 975 Old Lathemtown Road, Canton, GA 30115-7019.

15.     Defendant The Sovereign Financial Services Trust (the "Trust") is a Georgia business trust formed on or about June 6, 2019.

16.     The Trustee of the Trust is Defendant Phillip J. Tortorich, a citizen of Illinois.  He is sued in his capacity as Trustee.  He may be found at Torch Law, P.C., 750 N. State Street, 7th Floor, Suite 114, Chicago, Illinois 60654-3820.

17.     Defendant Tech Processing and Servicing, Inc. is a Georgia corporation incorporated on or about February 19, 2019.  Its principal place of business is at 28170 North Alma School Parkway, Suite 208, Scottsdale, AZ 85262.  Its sole owner is the Trust. Amy Tepsic is its Chief Executive Officer, Chief Financial Officer, secretary, treasurer, president, and director.

18.     Defendant Charles Johnson is chairman of the board of Tech Processing and Servicing, Inc. He may be found at 28170 North Alma School Parkway, Suite 208, Scottsdale, AZ 85262.

19.     Defendant Tech Processing and Servicing I, LLC is a limited liability company

4

organized under the law of Delaware on or about December 31, 2020. Its sole member is the Trust. Its sole owner is the Trust. Its registered agent and office is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

20. Defendant Tech Processing and Servicing II, LLC is a limited liability company organized under the law of Delaware on or about November 8, 2019. Its sole member is the Trust. Its sole owner is the Trust. Its registered agent and office is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

21. Defendant Tech Processing and Servicing III, LLC is a limited liability company organized under the law of Delaware on or about November 25, 2020. Its sole member is the Trust. Its sole owner is the Trust. Its registered agent and office is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

22. Defendant Dakota Processing and Servicing I, LLC, is a limited liability company organized under the law of Delaware on or about November 7, 2019. Its sole member is the Trust. Its sole owner is the Trust. Its registered agent and office is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

23. Defendant Dakota Processing and Servicing II, LLC is a limited liability company organized under the law of Delaware on or about September 14, 2020. Its sole member is the Trust. Its sole owner is the Trust. Its registered agent and office is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

24. Defendant Dakota Processing and Servicing III, LLC is a limited liability company organized under the law of Delaware on or about November 25, 2020. Its sole member is the Trust. Its sole owner is the Trust. Its registered agent and office is the Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, DE 19801.

25. Defendants John Does 1-10 are other natural or artificial persons who are involved in the activities described herein.

5

## DEFENDANTS' OPERATIONS

26.     Defendant Tech Processing and Servicing, Inc. entered into a services agreement with Eagle Valley Lending pursuant to which it operated the lending business conducted under the name of Eagle Valley Lending.  (Exhibit C)

27.     All of the Tech Processing and Dakota Processing entities are fungible and operate under the control and direction of Amy Tepsic, Mark David Tepsic, and Charles Johnson.

28.     The Tech Processing and Dakota Processing entities are controlled by them to the point that the separate practical day-to-day identities of each ceased to exist and the activities of each cannot be meaningfully distinguished from the activities of the others.

29.     For example, Amy Tepsic receives a salary in excess of $280,000 from Tech Processing and Servicing, Inc., and Mark David Tepsic received payments in the $36,000 to $120,000 range from Tech Processing and Servicing, Inc., at a time when that company supposedly had no funds.

30.     Adherence to the legal fiction of the separate existence of the Tech Processing and Dakota Processing entities would sanction fraud and/or promote injustice.

31.     Mark David Tepsic testified under oath on December 3, 2024, that those entities would regularly exchange substantial sums with no consideration.

32.     The funds lent by Eagle Valley Lending are transferred by ACH credit to the borrowers' respective bank  accounts throughout the United States.

33.     Repayment of the loans is made by ACH debit from the borrowers' respective bank accounts throughout the United States.

34.     Defendants' lending does not actually occur on the Tribe's reservation.

35.     A significant majority of the transactions occur within the State of Illinois, including applying for the loan and receiving and collecting the funds.

36.     The place where a consumer is located when he or she submits an application via an online portal with a Native American tribe determines where the transaction takes place for

jurisdictional purposes. *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 968 (9th Cir. 2018) ("However, the patrons' act of placing a bet or wager on a game of DRB while located in California constitutes gaming activity that is not located on Indian lands, violates the UIGEA, and is not protected by IGRA.").

### FACTS RELATING TO PLAINTIFF BEN STEFFEN'S LOANS

37.    Plaintiff Ben Steffen obtained two loans from Eagle Valley Lending:

   a.    On or about September 6, 2022, he obtained a $700 loan. This was rolled over into his second loan. Plaintiff does not have the loan agreement. The approval notice is in Exhibit D.

   b.    On or about February 16, 2023, Plaintiff Ben Steffen took out an installment loan from Eagle Valley Lending (Exhibit A). The loan had an amount financed of $710.44 and an annual percentage rate of 697.44%.

38.    Plaintiff made payments on the loans.

39.    Exhibit A is a standard form loan agreement used by Eagle Valley Lending on a regular basis.

40.    Defendants regularly make loans to individuals in Illinois at such rates.

41.    The Eagle Valley Lending website lists states in which Defendants will not make loans. (Exhibit B) Illinois was added to the list after the loans to Plaintiff.

42.    Defendants sought out Illinois residents for such loans.

43.    The loans were obtained for personal, family or household purposes and not for business purposes.

44.    The principal amounts were transferred to Plaintiff's bank account in Illinois via ACH.

45.    The loans were made entirely via the Internet.

46.    The loans were to be repaid via ACH. Plaintiff made multiple payments.

47.    Plaintiff has never set foot on the Tribe's land.

48.     Loans to Illinois residents made in the same manner as the loan to Plaintiff are governed by the laws of the State of Illinois.

49.     At no time have the Defendants had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling them to make loans to Illinois residents at more than 9% interest.

50.     Eagle Valley Lending loans were collected by a company called ZenResolve located in California, far from any tribal lands. (Exhibit H)

## ILLINOIS PROHIBITIONS ON PREDATORY LOANS

51.     Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq.* "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

52.     Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

53.     Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

54.     Any loan made by an unlicensed person to an Illinois resident at more than 9% interest is void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Instalment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other

8

provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

55. Any loans to Illinois residents at more than 9% interest that are made by unlicensed lenders violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

56. Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to persons who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engage in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

57. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 11cv8149, 2017 WL 758518, at *11 (S.D.N.Y. Feb. 27, 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

58. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *See, e.g., In the Matter of  Red Leaf Ventures, LLC,* No. 12 CC 569); *In the Matter of  Money Mutual, LLC*, No. 12 CC 408; *In the Matter of  Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

59. The excessive interest charges imposed by Defendants were intentional.  Prior to the

loans to Plaintiff, Defendants received a demand concerning such loans. (Exhibit E)

60.     The demand (Exhibit E) was responded to by an attorney named Anna Bruty, who purported to be general counsel to the Tribe. (Exhibit F)

61.     Bruty was in fact an attorney at Rosette, LLP, a firm which regularly put together "rent-a-tribe" schemes, as outlined below. (Exhibit G)

## RENT-A-TRIBE SCHEMES

62.     In an attempt to evade prosecution under usury laws of states like Illinois, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

63.      Here, and in such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

64.     The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe.

65.     In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

66.     However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

67.     To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities'] method of creation; (2) their purpose; (3) their structure, ownership, and management, including the

amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

68.     These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by non-tribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

69.     Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

70.     Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

71.     Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on fourteen felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.,* No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote,* 961 F.3d 105 (2d Cir. 2020).

## COUNT I - DECLARATORY AND INJUNCTIVE
## RELIEF AGAINST ILLEGAL CONDUCT

72.     Plaintiff incorporates paragraphs 1-71.

73.     This claim is against all Defendants.

74.     There is a controversy between Plaintiff and the class, on the one hand, and Defendants, on the other, as to whether Plaintiff and the class members must repay the loans made to them.

75.     Declaratory relief will resolve such controversy.

76.     An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

77.     Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

78.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Eagle Valley Lending at more than 9% interest (c) which loan has not been paid in full.

79.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

80.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

81.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

82.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained

counsel experienced in class actions and consumer credit litigation.

83. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

84. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

85. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

> i. Injunctive relief;
>
> ii. Declaratory relief;
>
> iii. Restitution of all amounts collected on the loans from members of the class;
>
> iv. Costs of suit; and
>
> v. Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS INTEREST ACT

86. Plaintiff incorporates paragraphs 1-71.

87. This claim is against all Defendants.

88. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

89. Plaintiff and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

90. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

91. The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Eagle Valley Lending at more than 9% interest (c) which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

92. Plaintiff may alter the class definition to conform to developments in the case and discovery.

93. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

94. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

95. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

96. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

97. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.    Damages as provided in 815 ILCS 205/6.

    ii.    Attorney's fees, litigation expenses and costs of suit; and

    iii.    Such other and further relief as the Court deems proper.

## COUNT III – PREDATORY LOAN PREVENTION ACT
## AND ILLINOIS CONSUMER FRAUD ACT

98.     Plaintiff incorporates paragraphs 1-71.

99.     This claim is against all Defendants.

100.    Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

101.    Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq.*

## CLASS ALLEGATIONS

102.    Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

103.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Eagle Valley Lending at more than 36% interest (all of its loans qualify) (c) on or after March 23, 2021.

104.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

105.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

106.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

107.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

108.    Plaintiff's claim is typical of the claims of the class members. All are based on the

same factual and legal theories.

109.    A class action is superior for the fair and efficient adjudication of this matter, in that:

    a.    Individual actions are not economically feasible.

    b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i.    Compensatory damages;

    ii.    Punitive damages;

    iii.    Attorney's fees, litigation expenses and costs of suit; and

    iv.    Such other and further relief as the Court deems proper.

## COUNT IV – RICO

110.    Plaintiff incorporates paragraphs 1-71.

111.    This claim is against Defendants Amy Tepsic, Mark David Tepsic, Charles Johnson, The Sovereign Financial Services Trust, Phillip J. Tortorich, and John Does 1-10, who are the RICO "persons."

112.    All loans made in the name of Eagle Valley Lending to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

113.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

114.    Eagle Valley Lending is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

115.    Defendants Amy Tepsic, Mark David Tepsic, Charles Johnson, The Sovereign Financial Services Trust, Phillip J. Tortorich, and John Does 1-10 are associated with this enterprise.

116.    Defendant Amy Tepsic, Mark David Tepsic, Charles Johnson, The Sovereign Financial Services Trust, Phillip J. Tortorich, and John Does 1-10 conducted or participated in the

16

conduct of the affairs of Eagle Valley Lending through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

117.    Plaintiff and the class members were deprived of money as a result.

## CLASS ALLEGATIONS

118.    Plaintiff brings this claim on behalf of a class.

119.    The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Eagle Valley Lending at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

120.    Plaintiff may alter the class definition to conform to developments in the case and discovery.

121.    The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

122.    There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

b.      Whether Eagle Valley Lending is an "enterprise."

c.      Whether Defendants Amy Tepsic, Mark David Tepsic, Charles Johnson, The Sovereign Financial Services Trust, Phillip J. Tortorich, and John Does 1-10 are associated with Eagle Valley Lending.

d.      Whether Defendants Amy Tepsic, Mark David Tepsic, Charles Johnson, The Sovereign Financial Services Trust, Phillip J. Tortorich, and John Does 1-10 conducted or participated in the affairs of Eagle Valley Lending through a pattern of making and collecting unlawful loans.

123.    Plaintiff will fairly and adequately represent the class members. Plaintiff has retained

17

counsel experienced in class actions and consumer credit litigation.

124.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

125.    A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.    Treble damages;

      ii.    Attorney's fees, litigation expenses and costs of suit; and

      iii.    Such other or further relief as the Court deems proper.

## COUNT V – RICO

126.    Plaintiff incorporates paragraphs 1-71.

127.    This claim is against all Defendants except Eagle Valley Lending.

128.    All loans made in the name of Eagle Valley Lending to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (9%).

129.    The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

130.    Eagle Valley Lending is an enterprise affecting interstate commerce, in that it is located outside of Illinois and makes loans to Illinois residents via the Internet.

131.    The Defendants other than Eagle Valley Lending conspired and agreed that Eagle Valley Lending would make and enforce loans to Illinois residents that were at such high rates that they were unenforceable under Illinois law in whole or in part as to principal or interest because of loans relating to usury.

132.    Pursuant to such conspiracy:

      a.      Arrangements were made, as set forth above, to make Internet loans;

      b.      Loans were made to Plaintiff and others;

      c.      The loans were collected via ACH debit;

133.     Plaintiff and the class members were deprived of money as a result.

## CLASS ALLEGATIONS

134.     Plaintiff brings this claim on behalf of a class.

135.     The class consists of (a) all individuals with Illinois addresses (b) to whom a loan was made in the name of Eagle Valley Lending at more than 18% interest (all of its loans qualify) (c) which loan was made on or after a date 4 years prior to the filing of suit.

136.     Plaintiff may alter the class definition to conform to developments in the case and discovery.

137.     The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least forty class members.

138.     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

      a.      Whether the loans at issue are "unlawful debts" as defined in RICO.

      b.      Whether Eagle Valley Lending is an "enterprise."

      c.      Whether the other Defendants conspired to make, enforce and collect usurious loans through Eagle Valley Lending.

139.     Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

140.     Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

141.     A class action is superior for the fair and efficient adjudication of this matter, in that:

      a.      Individual actions are not economically feasible.

      b.      Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

      i.      Treble damages;

      ii.      Attorney's fees, litigation expenses and costs of suit; and

      iii.      Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman (IL ARDC 0712094)
Heather A. Kolbus (IL ARDC 6278239)
Alexandra Huzyk (IL ARDC 6349537)
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service:  courtecl@edcombs.com

## JURY DEMAND

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.


*/s/ Daniel A. Edelman*
Daniel A. Edelman

-

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, loan, sale or file associated with Plaintiff, and any account or loan or number or symbol relating to them. These materials are likely very relevant to the litigation of these claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that such Defendant request that the third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of each Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman